## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

RAYMOND SIMS-LEWIS,

    Plaintiff,

    v.

FREDERICK ABELLO, *Warden*,
LT. MICHAEL HICKS,
OFFICER TERRELL BROWN and
CORIZON MEDICAL,

    Defendants.

Civil Action No. TDC-22-0902

### MEMORANDUM OPINION

Self-represented Plaintiff Raymond Sims-Lewis, who was a pretrial detainee incarcerated at Baltimore City Booking and Intake Center ("BCBIC") in Baltimore, Maryland, has filed this civil action pursuant to 42 U.S.C. § 1983 against BCBIC Warden Frederick Abello, Lt. Michael Hicks, Officer Terrell Brown, and Corizon Medical ("Corizon") for alleged constitutional violations arising from the use of pepper spray against him. Because Corizon, the contract provider of medical services to the Maryland correctional system, is in bankruptcy, the claims against Corizon will be stayed pursuant to 11 U.S.C. § 362(a)(1). *See In re: Tehum Care Services, Inc.*, No. 23-90086 (CML) (Bankr. S.D. Tex. 2023).

Defendants Warden Abello, Lt. Hicks, and Officer Brown (collectively, "the Correctional Defendants") have filed a Motion to Dismiss, which is fully briefed. Also pending before the Court is Sims-Lewis's Motion for Appointment of Counsel. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons

set forth below, the Correctional Defendants' Motion will be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

On November 9, 2021, Sims-Lewis was removed from his cell and placed in the Inmate Mental Health Unit ("IMHU"), which he refers to as "psych isolation." Compl. at 2, ECF No. 1. Sims-Lewis alleges that this transfer occurred without explanation one day after he had requested a transfer to protective custody and was thus a "cover up" to deny Sims-Lewis his right to protective custody. *Id.*

Upon being placed in the IMHU, Sims-Lewis was ordered to remove his clothes. After Sims-Lewis complied, "Nurse Kenny" told him that the isolation would last only 24 hours, and that after that period, he would receive his clothes back and be placed back into general population.

According to the Complaint, BCBIC policy requires that a doctor evaluate an inmate within 24 hours of his placement in psych isolation. Sims-Lewis alleges that BCBIC violated this policy. After being placed in medical isolation, Sims-Lewis waited all night to see a psychiatric doctor and still had not seen one by 11:00 a.m. the next morning, even though he had repeatedly asked to see a doctor. At that time, when told that he had been admitted into the IMHU, Sims-Lewis protested that the officers had made a mistake, that he needed placement in protective custody instead, and that he should be able to see a doctor and a supervisor.

In response to Sims-Lewis's request to meet with a supervisor, Lt. Hicks and Officer Brown met with Sims-Lewis. Sims-Lewis alleges that Officer Brown began "screaming" at him because Officer Brown was "upset" that he "had to deal with" with Sims-Lewis the day before. *Id.* at 5. Sims-Lewis also alleges that Lt. Hicks began "threatening" him, aimed a "can of pepper spray mace" at his face, and ordered him to sit down, and that Officer Brown

2

produced a pair of handcuffs. *Id.* at 5. According to Sims-Lewis, this conduct scared and confused him, and he was in fear for his safety. Sims-Lewis repeated to Lt. Hicks and Officer Brown that the officers had made a mistake, and that he needed to be seen by a doctor so that he could return to general population. Lt. Hicks told Sims-Lewis that if he did not put the handcuffs on, Hicks would spray him with pepper spray and forcibly handcuff him. As Sims-Lewis held his hands out in front of him, Officer Brown told him that he needed to be handcuffed in the back. Sims-Lewis protested on the grounds that BCBIC's policy required inmates admitted to the IMHU to be handcuffed in front. Sims-Lewis further alleges that if he was escorted through the facility with his hands restrained behind him, he would be unable to defend himself.

In fear of what might happen outside the view of surveillance cameras, Sims-Lewis then attempted to run out of the room to an area with surveillance cameras. Lt. Hicks then discharged pepper spray to prevent Sims-Lewis from leaving the room. Sims-Lewis, who was still unclothed, lay down on the floor in an attempt to "be saved by [the] camera." *Id.* at 7. He alleges that Lt. Hicks then began kicking him in the eyes and allowed "other officers involved" to do the same. *Id.* Meanwhile, Officer Brown discharged pepper spray on Sims-Lewis's genitals and buttocks.

Sims-Lewis was then escorted to the North Tower while handcuffed and without shoes. Sims-Lewis was then locked in a cell in the IMHU. During this time, Sims-Lewis states that he was "crying for medical attention" because the pepper spray caused pain in his genitals in that they "burned on fire," and that the pain continued for three days. *Id.* at 7–8. He asserts that no one arranged for medical treatment. Sims-Lewis alleges that he never should have been pepper sprayed because he is a "psych patient" and "a person with disability." *Id.* at 7.

In the Complaint, as to the Correctional Defendants, Sims-Lewis alleges that this conduct violated his rights under the Sixth and Eighth Amendments to the United States Constitution. He

3

also alleges claims of intentional infliction of emotional distress, defamation, assault and battery, negligence, and conspiracy. He further claims that Lt. Hicks and Officer Brown engaged in entrapment and a hate crime, and that Warden Abello and Lt. Hicks are liable for negligent hiring, training, and supervision. Finally, Sims-Lewis also alleges that Nurse Kenny, who was not included as a defendant in the caption of the Complaint, engaged in defamation, negligent hiring, training, and supervision, and a violation of the Sixth Amendment. As for Corizon, which has not yet been served with the Complaint, Sims-Lewis alleges that it is liable for failing to properly treat him for pepper spray exposure, allowing him to suffer in pain for three days, intentional infliction of emotional distress and defamation, and engaging in negligent hiring, training, and supervision.

## DISCUSSION

In their Motion, the Correctional Defendants seek dismissal of the Complaint under Federal Rule of Civil Procedure 12(b)(6) on the grounds that: (1) the Eighth Amendment does not apply to pretrial detainees; (2) the Complaint fails to allege that Warden Abello was personally involved in the incident underlying the Complaint and fails to state a claim of supervisory liability; (3) the Sixth Amendment is inapplicable to the facts asserted; (4) the Complaint fails to state claims for conspiracy, entrapment, a hate crime, defamation, or negligent training and supervision; and (5) the defendants are entitled to governmental immunity on all common law and statutory claims brought under Maryland law.

### I.     Legal Standard

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements

4

do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

## II.     Federal Constitutional Claims

Pursuant to 42 U.S.C. § 1983, Sims-Lewis alleges that the conduct described in the Complaint violated his rights under the Eighth and Sixth Amendments to the Constitution.

### A.     Warden Abello

The Correctional Defendants seek dismissal of the constitutional claims against Warden Abello on the grounds that there are no allegations that he personally committed the allegedly unlawful acts, and that the allegations do not support a finding of supervisory liability. Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation because the doctrine of *respondeat superior*, or vicarious liability, does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). A supervisor who has not directly participated in a constitutional violation may be subject to supervisory liability under § 1983 if: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an

affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Sims-Lewis does not allege any personal involvement by Warden Abello in the decision to transfer him to IMHU or the use of force against him and alleges no facts that would demonstrate that Warden Abello had knowledge, actual or constructive, of that conduct. Therefore, the Complaint does not state a constitutional claim against Warden Abello.

**B.      Eighth Amendment**

Sims-Lewis alleges that the Correctional Defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment. The Eighth Amendment protects prison inmates from "cruel and unusual punishments." U.S. Const. amend. VIII. It does not apply to pretrial detainees. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979); *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990). Nevertheless, where Sims-Lewis is self-represented and the Court must construe his Complaint liberally, it finds that his claim relating to the use of pepper spray against him is properly construed as a claim under the Due Process Clause of the Fourteenth Amendment, which protects pretrial detainees from conduct that constitutes punishment. *See Belcher*, 898 F.2d at 34.

On a claim that a pretrial detainee was subjected to excessive force in violation of the Fourteenth Amendment, a plaintiff must show that force was used "purposely and knowingly," and that it was "objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015). Thus, unlike for an Eighth Amendment claim, such a claim need not establish a subjective intent to punish or cause harm. *See id.* Objective reasonableness turns on the "facts and circumstances" of the particular case. *Dilworth v. Adams*, 841 F.3d 246, 255 (4th Cir. 2016). The

Court considers "the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with 20/20 vision of hindsight." *Kingsley*, 576 U.S. at 397.

Accepting the allegations in the Complaint as true, as is required at this stage, the Court finds that Sims-Lewis has stated a plausible claim that his Fourteenth Amendment rights were violated when he was subjected to kicking and the use of pepper spray in the manner and amount described. Thus, while the Court finds no viable Eighth Amendment claim, the Motion will be denied as to the Fourteenth Amendment claim against Lt. Hicks and Officer Brown relating to excessive force.

Likewise, the Court construes the allegations, including the reference to "neglect" and the claim that "Lt. Hicks and Officer Brown ordered[ed] the nursing department not to help" him, Compl. at 8–9, to assert a claim for failure to provide adequate medical care in violation of the Fourteenth Amendment. Such a claim requires a showing of deliberate indifference to a serious medical need. *See Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021) (applying the Eighth Amendment deliberate indifference standard to a pretrial detainee's medical claim), *Moss v. Harwood*, 19 F.4th 614, 624 (4th Cir. 2021) (same). Given the allegations of excessive force and the lack of any medical attention following the pepper spraying of his genitals, Sims-Lewis has also stated a viable Fourteenth Amendment claim against Lt. Hicks and Officer Brown on this basis.

The Court does not find, however, a viable Fourteenth Amendment claim based on the decision to send Sims-Lewis to IMHU for two reasons. First, a prisoner or pretrial detainee generally does not have a constitutional right to any particular placement or housing designation. *See, e.g.*, *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Hewitt v. Helms*, 459 U.S. 460, 468 (1983); s*ee also Sandin v. Conner*, 515 U.S. 472, 486 (1995) (requiring that placement in a particular

housing designation impose an atypical and significant hardship in order to implicate due process rights). Second, the allegations in the Complaint do not support the conclusion that any of the named defendants had any role in the decision to send him to IMHU.

### C. Sixth Amendment

Sims-Lewis alleges that all Defendants violated his rights under the Sixth Amendment, but he does not explain how this constitutional amendment applies to the facts of his claim. The Sixth Amendment guarantees to the accused in all criminal prosecutions the rights to a speedy and public trial, to an impartial jury, to confront the witnesses against him, to have compulsory process for obtaining witnesses, and to have the assistance of counsel for his defense. U.S. Const. amend. VI. Because the facts as asserted by Sims-Lewis do not relate to a criminal case or trial, the Motion will be granted as to the Sixth Amendment claim.

### D. Conspiracy

Sims-Lewis also alleges a "conspiracy" which can be construed as a claim of a civil conspiracy under § 1983. On such a claim, a plaintiff must present evidence that two or more defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in deprivation of a constitutional right. *See Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). To assert such a claim, a plaintiff must allege more than just "parallel conduct" and a "conclusory allegations of [an] agreement" to deprive the plaintiff of a constitutional right. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 1987). Here, Sims-Lewis has, at most, alleged parallel conduct between Lt. Hicks and Officer Brown without any specific facts supporting an inference of an actual agreement to violate his rights. The Court will therefore dismiss any such claim. For the same reasons, any state law conspiracy claim will also be dismissed.

### III.    Failure to State a Claim

The Correctional Defendants also argue that most of the remaining claims should be dismissed for failure to state a claim. These claims include those for entrapment, hate crimes, defamation, and intentional infliction of emotional distress.

Entrapment is an affirmative defense available in a criminal prosecution that requires a showing of "'government inducement and the defendant's lack of predisposition to commit the crime.'" *United States v. Squillacote*, 221 F.3d 542, 564 (4th Cir. 2000) (quoting *U.S. v. Sligh*, 142 F.3d 761, 762 (4th Cir. 1998)). It is not an independent cause of action, so any such claim will be dismissed.

Sims-Lewis's claim of a "hate crime" also fails. A hate crime is defined under federal law as the commission of bodily injury to a person "because of the actual or perceived race, color, religion, or national origin," or "gender, sexual orientation, gender identity, or disability of any person." 18 U.S.C. § 249(a)(1), (2) (2018). Similarly, Maryland law prohibits the commission of a criminal act or destruction of property motivated "either in whole or in substantial part by another person's or group's race, color, religious beliefs, sexual orientation, gender, gender identity, disability, or national origin, or because another person or group is homeless." Md. Code Ann., Crim. Law § 10–304 (LexisNexis 2021). These statutes identify criminal offenses that are to be enforced through criminal prosecution; they do not provide for a civil private right of action that would permit Sims-Lewis to file suit for such a violation. *See* 18 U.S.C. § 249; *see also* Md. Code. Ann., Crim. Law § 10–304. In any event, the Complaint lacks allegations that would support a conclusion that Lt. Hicks or Officer Brown took any actions motivated by a discriminatory animus that could support a claim of a hate crime. This claim will therefore be dismissed.

9

To sustain a claim for defamation under Maryland law, a plaintiff must establish that (1) the defendant made a defamatory statement to a third person; (2) the statement was false; (3) the defendant was legally at fault in making the statement; and (4) the plaintiff suffered harm as a result of the statement. *Gohair v. Darvish*, 767 A.2d 321, 327 (Md. 2001). Although Sims-Lewis has alleged defamation, he has identified no false statement made by a defendant to any third person. The Complaint focuses on a physical attack on Sims-Lewis, not verbal statements. Thus, the claims for defamation will be dismissed.

Finally, intentional infliction of emotional distress ("IIED") requires a showing that (1) the conduct in question was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the conduct and the emotional distress; and (4) the emotional distress was severe. *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977); *Arbabi v. Fred Meyers, Inc.*, 205 F. Supp. 2d 462, 465–66 (D. Md. 2002). Such a claim is "rarely viable," *Arbabi*, 205 F. Supp. 2d at 466, and is reserved for "those wounds that are truly severe and incapable of healing themselves," *Figueiredo-Torres v. Nickel*, 584 A.2d 69, 75 (Md. 1991). Here, beyond the fact that the conduct likely does not rise to the level of outrageousness necessary to support an IIED claim, Sims-Lewis has not alleged facts showing the requisite level of emotional distress to support a viable IIED claim. The IIED claim will therefore be dismissed.

## IV.    State Law Immunity

As for the remaining claims, Defendants assert that they are immune from suit on the Maryland state law claims of negligence, negligent hiring, training, and supervision, and assault and battery. The Maryland Tort Claims Act ("MTCA") provides that "State personnel shall have the immunity from liability described under § 5–522(b) of the Courts and Judicial Proceedings Article." Md. Code Ann., State Gov't § 12–105 (Lexis 2021). In turn, the cited provision provides

immunity "from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence." Md. Code Ann., Cts & Jud. Proc. § 5–522(b). Here, the Complaint does not provide a basis to conclude that any claims for negligence, negligent hiring, training, and supervision, or conspiracy were committed with malice or gross negligence. Such claims will therefore be dismissed.

The Complaint, however, alleges sufficient facts to show that any assault and battery was the result of malice or gross negligence, specifically the kicking and use of pepper spray on sensitive areas. Thus, those claims will not be dismissed on immunity grounds.

## V.    Nurse Kenny

Although "Nurse Kenny" has not yet been served and is not a party to the Motion, because Sims-Lewis is a self-represented prisoner proceeding *in forma pauperis*, the Court screens the claims against him under 28 U.S.C. § 1915A and must dismiss any part of the Complaint that, as relevant here, fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915A(a), (b)(1) (2018). Here, the allegations against Nurse Kenny are limited to a statement that Sims-Lewis would only be in IMHU for 24 hours and would then receive his clothes back. Such allegations are insufficient to state a plausible claim under any of Sims-Lewis's legal theories. All claims against Nurse Kenny will therefore be dismissed.

## VI.    Motion for Appointment of Counsel

Sims-Lewis has also filed a Motion for Appointment of Counsel and argues that needs appointed counsel in light of his indigency and his incarceration in a facility without a law library. "The court may request an attorney to represent any person" proceeding *in forma pauperis* who is "unable to afford counsel." 28 U.S.C. § 1915(e)(1). In civil actions, the Court appoints counsel only in exceptional circumstances. *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). In doing

11

so, the Court considers "the type and complexity of the case," whether the plaintiff has a colorable claim, and the plaintiff's ability to prosecute the claim. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984) (citations omitted), *abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989). Because the Court will deny the Motion to Dismiss as to the Fourteenth Amendment claims against Lt. Hicks and Officer Brown based on the alleged excessive force and failure to provide medical care, the next steps in this case will be the filing of an Answer and discovery. Because of the practical difficulties of conducting discovery as a detained party, counsel is necessary for the case to proceed further. The Motion will therefore be granted.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss will be GRANTED IN PART and DENIED IN PART. The Motion will be granted as to all claims except the Fourteenth Amendment claims against Lt. Hicks and Officer Brown based on excessive force and the failure to provide medical care and the assault and battery claims against those same defendants. The Motion will be otherwise denied. All claims against Nurse Kenny will be dismissed. The Motion for Appointment of Counsel will be GRANTED. A separate Order shall issue.

Date: August 29, 2023

THEODORE D. CHUANG
United States District Judge

12